# REYMANN BREWING COMPANY *v.* BRISTER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 76. Submitted November 7. 1900. — Decided December 17, 1900.

The statute of Ohio, known as the Dow law, 83 Ohio Laws, 157, which levies a tax upon the business of trafficking in spirituous, vinous, malt or any intoxicating liquors, carried on within the State, is not in conflict with the provisions of the Constitution of the United States when applied to a corporation of West Virginia, having its principal place of business in Wheeling in that State, and manufacturing there beer which it sends in barrels, or wooden cases containing several bottles each, to Ohio for sale,

or for storing in the original barrels, cases or bottles, to be sent out as stored to the State of Ohio for disposition and sale.

The Dow law is within the scope of the police power of the State, and does not discriminate between foreign and domestic dealers.

On January 13, 1898, the Reymann Brewing Company, a corporation of the State of West Virginia, with its principal office in the city of Wheeling, filed a bill of complaint in the Circuit Court of the United States for the Southern District of the State of Ohio, against Harry Brister, treasurer of the county of Jefferson, State of Ohio, seeking to restrain and enjoin the said Brister from retaining the possession of certain personal property belonging to the brewing company, which he had seized in enforcement of certain laws of the State of Ohio, which provide for the collection of a tax known as the "Dow tax."

The cause was submitted upon the bill, a general demurrer thereto, and a statement of facts agreed upon by the parties. The statement of facts was as follows:

"The Reymann Brewing Company, the complainant, is a corporation resident in and a citizen of the State of West Virginia, and owns and operates a brewery at Wheeling, West Virginia, where it manufactures a beverage of malt and intoxicating liquor commonly known as beer. It packs said beer in wooden barrels of various sizes and also in glass bottles, which bottles are packed in wooden boxes called cases, twenty-four quart bottles or thirty-six pint bottles being packed in each case.

"These barrels and cases are packed at the brewery of the Reymann Brewing Company, at Wheeling, in the State of West Virginia, there delivered to the common carrier, the railroad company, and shipped to Steubenville, in the county of Jefferson, in the State of Ohio, where they are received by Bert Meyers, who is employed by the Reymann Brewing Company in the capacity of soliciting agent, salesman and driver, and who calls on retail dealers in intoxicating liquors at their places of business in and about said city of Steubenville, and as such agent then and there solicits orders for and sells any number of the above-described packages desired. He then loads on the wagon owned by the Reymann Brewing Company the barrels or cases

above-described and delivers them to the purchasers in the original and unbroken packages in the same shape and condition as delivered to the common carrier at the brewery at Wheeling. Said agent also makes sales of said packages at and delivers the same from the place where stored at Steubenville. In no instance are any of the barrels or cases opened until after sold and delivered to the purchaser, and no change is made in any of the packages from the time they are packed at the brewery at Wheeling until delivered to the persons purchasing the same.

" Packages received by the said Bert Meyers at the railway station at Steubenville for which he has not received orders or which he has not already sold are stored in a room on the ground floor of a cold storage house in said city of Steubenville, for which the Reymann Brewing Company pays a regular monthly rental, and of which room the said brewing company has the exclusive use and possession. The packages not delivered directly from the railway station to purchasers are delivered from the said storage house or room upon orders solicited, as aforesaid, and upon sales then and there at said storage room made. The price of the beer thus delivered is collected in some instances from time to time by a collector, from the brewery at Wheeling, who calls on the purchasers and collects, and in other instances such collections are made by said agent, Bert Meyers, at the time of sale and delivery at said storage room.

" During the period for which the assessments hereinafter mentioned were made, the said Reymann Brewing Company carried on its beer business in said city of Steubenville in the same manner as herein described.

" The horses, harness and wagon described in the bill on which the defendant, Harry Brister, has levied, and which he has taken into his possession, are used by the Reymann Brewing Company solely in the matter of delivering to purchasers the packages above described.

" Two barrels and cases of beer described in the bill were packed at the brewery at Wheeling and shipped in the manner above described to Steubenville, Ohio, placed in the storeroom above mentioned, and were to be there sold and delivered in the manner above described, when they were levied on and

taken possession of by the defendant, Harry Brister.   The defendant, Harry Brister, is treasurer of Jefferson County, in the State of Ohio, and as such treasurer did so levy upon and take into his possession and has advertised for sale the following personal property of the Reymann Brewing Company :

"Two horses (bay geldings), two horse covers, one set of double harness, one beer wagon, thirty-seven of said. original and unbroken cases of beer containing quarts, four of said original and unbroken cases of beer containing pints, sixty-five original and unbroken barrels of beer containing one eighth size, one hundred and fourteen original and unbroken wooden barrels of beer of one quarter size, twenty-nine original and unbroken wooden barrels of beer of one half size ; all of which he has done, as said treasurer of Jefferson County, Ohio, for the purpose of collecting from the said Reymann Brewing Company certain taxes or assessments and penalties, amounting to $873.60, and charged against said company on the tax duplicate in the office of said treasurer under and by virtue of a law of the State of Ohio entitled 'An act providing against the evils resulting from the traffic in intoxicating liquors,' passed May 14, 1886, (see Ohio Laws, vol. 83, p. 157,) as amended March 21, 1887, (see Ohio Laws, vol. 84, p. 224,) March 26, 1888, (see Ohio Laws, vol. 85, p. 117,) and February 20, 1896, (see Ohio Laws, vol. 92, p. 34,) known as the Dow law ; which said levy and seizure were duly made, and which amount ($873.60) the said Reymann Brewing Company lawfully owes, if, under the circumstances in this statement set forth and the law herein referred to, said company or its business in said city of Steubenville, as herein described, should and may lawfully be assessed, as aforesaid.

"The defendant will, unless restrained by the court, insist on collecting future assessments of the complainant under said Dow law in the manner prescribed by said law—that is to say, by further seizures.

"It is agreed by both parties to the above-styled cause that the foregoing statement is a true statement of the facts, and that the said cause may be submitted to the court on said statement of facts agreed."

The Ohio statute referred to in the agreed statement of facts,

known as the "Dow law," and entitled "An act providing against the evils resulting from the traffic in intoxicating liquors," provides:

"SEC. 1. That upon the business of trafficking in spirituous, vinous, malt or any intoxicating liquors, there shall be assessed, yearly, and shall be paid into the county treasury, as hereinafter provided, by every person, corporation or copartnership engaged therein, and for each place where such business is carried on by or for such person, corporation or copartnership, the sum of three hundred and fifty dollars.

"SEC. 2. That said assessment, together with any increase thereof, as penalty thereon, shall attach and operate as a lien upon the real property on and in which such business is conducted, as of the fourth Monday of May each year, and shall be paid at the times provided for by law for the payment of taxes on real or personal property within the State, to wit: one half on or before the twentieth day of June, and one half on or before the twentieth day of December, of each year."

"SEC. 4. That if any person, corporation or copartnership shall refuse or neglect to pay the amount due from them under the provisions of this act within the time therein specified, the county treasurer shall thereupon forthwith make said amount due with all penalties thereon, and four per cent collection fees and costs, by distress and sale, as on execution, of any goods and chattels of such person, corporation or copartnership; he shall call at once at the place of business of each person, corporation or copartnership; and in case of the refusal to pay the amount due, he shall levy on the goods and chattels of such person, corporation and copartnership, wherever found in said county, or on the bar, fixtures or furniture, liquors, leasehold and other goods and chattels used in carrying on such business, which levy shall take precedence of any and all liens, mortgages, conveyances or incumbrances hereafter taken or had on such goods and chattels, so used in carrying on such business; nor shall any claim of property by any third person to such goods and chattels, so used in carrying on such business, avail against such levy so made by the treasurer, and no property, of any kind, of any person, corporation or copartner-

ship liable to pay the amount, penalty, interest and cost due under the provisions of this act, shall be exempt from said levy. The treasurer shall give notice of the time and sale of the personal property to be sold under this act, the same as in cases of the sale of personal property on execution: and all provisions of law applicable to sales of personal estate on execution shall be applicable to sales under this act, except as herein otherwise provided; and all moneys collected by him under this act shall be paid, after deducting his fees and costs, into the county treasury. In the event of the treasurer, under the levy provided for under this act, being unable to make the amount due thereunder, or any part thereof, the county auditor shall place the amount due and unpaid on the tax duplicate against the real estate in which said traffic is carried on, and the same shall be collected as other taxes and assessments on said premises."

"SEC. 8. The phrase 'trafficking in intoxicating liquors,' as used in this act, means the buying or procuring and selling of intoxicating liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes, but such phrase does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof, at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time."

Subsequently the defendant, with leave of court, withdrew the demurrer, and the cause coming on to be heard was, after agreement, submitted to the court upon the bill and the agreed statement of facts. On February 25, 1899, a final judgment was entered dismissing the bill at the cost of the complainant. Thereupon an appeal was allowed to this court.

*Mr. J. Bernard Handlan* for appellant.

*Mr. Addison C. Lewis* for appellee.

MR. JUSTICE SHIRAS, after making the above statement of the case, delivered the opinion of the court.

By the first section of the statute of the State of Ohio, known as the "Dow law," it is provided "that upon the business of trafficking in spirituous, vinous, malt or any intoxicating liquors there shall be assessed yearly, and shall be paid into the county treasury, as hereinafter provided, by every person, corporation or copartnership engaged therein, and for each place where such business is carried on by or for such person, corporation or copartnership, the sum of three hundred and fifty dollars." Ohio Laws, vol. 92, p. 34.

The Reymann Brewing Company, a corporation of the State of West Virginia, whose property has been seized to enforce payment of such an assessment, alleges that, as respects such foreign corporation, the statute is void, because it discriminates in favor of manufacturers and brewers of beer who have their plants located within the State of Ohio as against those who have their plants located in other States, and because it constitutes, in its practical operation, a regulation of commerce between the States.

So far as the terms of the statute are concerned, they do not disclose any intention to discriminate between foreign and domestic dealers in intoxicating liquors, as the tax in question is to be assessed upon every person, corporation or copartnership engaged in the business of trafficking in such liquors. But it is contended that the effect of the legislation necessarily results in such a discrimination, because of the provisions of the eighth section of the statute, which is in the following words:

"The phrase 'trafficking in intoxicating liquors,' as used in this act, means the buying or procuring and selling of intoxicating liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes, but such phrase does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof, at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time."

The effect of this is claimed to be that the domestic manufacturer may sell liquor, in quantities of one gallon or more, at the place of manufacture without being subjected to the tax,

and that thus he has an advantage over the foreign manufacturer, who can only sell, in Ohio, at some other place than the place of manufacture, and is thereby subjected to the tax. In other words, while the domestic manufacturer must pay the tax if he sells at other places than the place of manufacture, yet as he is declared not to be within the act in selling at the place of manufacture in quantities not less than one gallon at any one time, such a provision operates as an illegal discrimination against the foreign competitor, who must necessarily sell at places other than the place of manufacture.

Under this provision, the manufacturers, whether within or without the State, may sell at the manufactory and ship to any part of the State of Ohio, and the incidental disadvantage that the foreign manufacturer is under that if, instead of selling at the place of his plant, he wishes to establish a place within the State of Ohio, he is obliged to pay the tax, does not appear to arise out of any intention on the part of the state legislature to make a hostile discrimination against foreign manufacturers. If an Ohio corporation or copartnership should establish its place of manufacture in another State it would be subjected to the tax if it sold intoxicating liquor at a place within the State of Ohio; and if a foreign corporation should manufacture at a place within Ohio, it would sell its product, in quantities not less than one gallon, without being subjected to the tax.

A similar contention was disposed of by this court in *New York* v. *Roberts*, 171 U. S. 658, 662. In that case a corporation of the State of Michigan, and having its factory within that State, had a warehouse and store for the sale of its products in the city of New York. A statute of the State of New York enacted that " every corporation, joint stock company or association whatever, now or hereafter incorporated, organized or formed under, by or pursuant to law in this State, or in any other State or country and doing business in this State, except manufacturing or mining companies or corporations wholly engaged in carrying on manufacture or mining ores within this State, shall be liable to and shall pay a tax as a tax upon its franchise or business into the state treasury annually," and that " the amount of capital stock which shall be the basis for

tax . . . in the case of every corporation, joint stock company and association, liable to taxation thereunder shall be the amount of capital stock employed within this State."

It was claimed that the Michigan corporation, having come within the jurisdiction of New York by compliance with all the provisions of law imposing conditions for transacting business within the State, was denied the equal protection of the law when subjected to a tax from which were exempted other corporations, foreign and domestic, which wholly manufactured the same class of goods within the State, and that such a tax was an unjust discrimination against the corporation, whose place of manufacture was in the State of Michigan. But this court held otherwise, saying:

"If the object of the law in question was to impose a tax upon products of other States, while exempting similar domestic goods from taxation, there might be reason to contend that such a distinction was constitutionally objectionable as tending to affect or regulate commerce between the States. But we think that obviously such is not the purpose of this legislation. . . . It will be perceived that the tax is prescribed as well for New York corporations as for those of other States. It is true that manufacturing or mining corporations wholly engaged in carrying on manufacture or mining ores within the State of New York are exempted from this tax; but such exemption is not restricted to New York corporations, but includes corporations of other States as well, when wholly engaged in manufacturing within the State."

So, in the present case, the exemption is not confined to Ohio corporations or copartnerships, but extends as well to foreign corporations whose place of manufacturing is within the State of Ohio; and so, likewise the tax is imposed on Ohio corporations which manufacture goods in other States and establish places for their sale within the State of Ohio, or which, manufacturing within the State, establish places within the State distinct from the manufactory, where their liquors are sold and delivered.

In exempting sales in quantities exceeding one gallon at the place of manufacture, and in imposing the tax upon such sales

when made at places elsewhere, the legislature of Ohio was, in the exercise of its police power, aiming to restrict the evils of saloons, or places where liquors are drunk. By imposing the tax upon the latter, the law, to some extent, is calculated to lessen an acknowledged source of vice and disorder.

The Supreme Court of the State of Ohio, in construing the statute in question, has clearly pointed out the reasons that actuated the legislature in distinguishing between places where the liquors are manufactured and those where liquors are sold to be drunk on the premises. Thus in the case of *Adler* v. *Whitbeck*, 44 Ohio St. 539, 574, that court said: "It was for the legislature to determine the forms of the traffic that required to be regulated as a source of evil. It has in a measure drawn a line between a distillery and a brewery on the one hand and a saloon on the other. There is nothing unreal in the distinction. It is known by all men, and in one respect probably too well by many men. And unless absolute prohibition is resorted to no more practical distinction could be made."

It remains to consider whether the court below erred in finding, under the facts agreed upon, that the Reymann Brewing Company has established a place in the city of Steubenville, in the State of Ohio, where its beer was sold and delivered, and thus has become liable to the tax prescribed by the law.

It is sufficient to say that it is distinctly admitted that the brewing company not only ships its beer in barrels and cases, in filling orders received, and delivers it directly to the purchasers, (which sales and deliveries are not by the statute subjected to any tax,) but also maintains a storehouse in Steubenville, where it sells and delivers beer and collects payment. Such transactions constitute the brewing company a trafficker in intoxicating liquor having a place, other than the place of manufacture, where the traffic is carried on within the meaning of the law. And, of course, it is obvious that such liquors, sold and delivered within the State of Ohio, are within the provisions of the statute of the United States, known as the Wilson law, (Act of August 8, 1890, c. 728,) which provides that intoxicating liquors transported into any State for sale or storage therein shall be subject to the operation and effect of the laws of such

State, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquor had been produced in such State, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.   26 Stat. 313.

As this statute subjects intoxicating liquors imported into a State to the operation and effect of the laws of such State only when enacted in the exercise of its police powers, it is contended that such is not the character of the Dow law; that, as it contains no prohibition upon the manufacture or sale of intoxicating liquors, and only purports to regulate the trafficking therein, it is not a police measure.

As we have heretofore stated, the Supreme Court of Ohio has construed the law to aim at controlling and regulating sales in quantities less than one gallon in saloons or at places other than the place of manufacture, and to be, therefore, within the scope of the police power.   We think that this view of the meaning and intent of the statute is consistent with its language, and, even if not bound by the construction put upon the statute by the state court when applying the provisions of the Wilson law, we do not hesitate to adopt it.

A similar contention was disposed of by this court in the case of *Vance* v. *Vandercook Co.*, 170 U. S. 438, 447, and where it was said: ·

" From the fact that the state laws permit the sale of liquor, subject to particular restrictions, and only upon enumerated conditions, it does not follow that the law is not a manifestation of the police power of the State.   The plain purpose of the act of Congress having been to allow state regulations to operate upon the sale of original packages of intoxicants coming from other States, it would destroy its obvious meaning to construe it as permitting the state laws to attach to and control the sale only in case the States absolutely forbade sales of liquor and not to apply in case the States determined to restrict or regulate the same."

These views prevailed in the court below, where it was held that manufacturers of intoxicating liquors within and without the State may sell at the manufactory and ship to any part

of the State of Ohio, and may solicit orders for their goods in any part of the State to be shipped from the manufactory; but that if they establish places within the State, distinct from the manufactory, where their goods are to be stored, for the purposes of sale and delivery, and such goods are there sold and delivered, then they become traffickers within the meaning of the law and are liable to pay the tax. *Reymann Brewing Co.* v. *Brister*, 92 Fed. Rep. 28.

Accordingly the decree of the Circuit Court, dismissing the bill of complaint, is

*Affirmed.*

Mr. Justice HARLAN concurs in the result.