EVANSVILLE BREWING ASS'N v. EXCISE COMMISSION OF JEFFER-
SON COUNTY, ALA., et al.

(District Court, N. D. Alabama, S. D. May 31, 1915.)

No. 224.

1. INJUNCTION ☞105—RESTRAINING CRIMINAL PROSECUTIONS—INVALIDITY OF
STATUTE—INVASION OF PROPERTY RIGHTS.
    The jurisdiction of a court of equity to enjoin the enforcement of a void
statute is not affected by the fact that the statute is of a criminal or penal
nature, if its enforcement will destroy property rights, to the irreparable
injury of complainant.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec.
Dig. ☞105.]

2. INJUNCTION ☞85—SUBJECTS OF PROTECTION—CONSTITUTIONAL RIGHTS.
    That a state Legislature has vested a commission with discretionary
power to do certain acts constitutes no defense to a suit to enjoin such
acts, if they would be in violation of the rights of complainant under the
Constitution of the United States.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec.
Dig. ☞85.]

3. COMMERCE ☞60—CONSTITUTIONAL LAW ☞240—INTOXICATING LIQUORS
☞15—STATE LICENSE LAW.
    Act Ala. April 6, 1911, regulating the sale of liquors, and known as the
"Smith Law" (Acts Ala. 1911, p. 249), by section 12, imposes a license tax
of $1,500 on breweries, which also entitles them to sell their product at
wholesale without additional license. It further provides that "each
agency of a brewery of another state doing business in this state shall pay
an annual license tax of $1,500, and any person, whether retail dealer or
not, selling the goods or product of any brewery of another state, shall be
deemed and held an agent thereof, unless such brewery shall have an es-
tablished agency in this state." *Held* that, under Wilson Act Aug. 8, 1890,
c. 728, 26 Stat. 313 (Comp. St. 1913, § 8738), subjecting liquors shipped in
interstate commerce to the laws of the state after their delivery to the con-
signee, such act is not invalid as imposing a tax on interstate commerce,
nor is it unjustly discriminatory as against the foreign manufacturer, but
as to him is a valid exercise of the police power of the state.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 91–95; Dec.
Dig. ☞60; Constitutional Law, Cent. Dig. §§ 688, 693, 697–699; Dec.
Dig. ☞240; Intoxicating Liquors, Cent. Dig. §§ 17, 18; Dec. Dig. ☞15.]

In Equity. Suit by the Evansville Brewing Association against the
Excise Commission of Jefferson County, Ala., and others. On mo-
tion of defendants to dismiss bill. Motion granted.

London & Fitts, of Birmingham, Ala., for complainant.
Frank S. White & Sons, of Birmingham, Ala., for defendants.

GRUBB, District Judge. This cause is submitted on a motion to
dismiss the bill because of want of equity. The bill was filed by the
complainant, a corporation and a citizen of Indiana, engaged in the
business of operating a brewery in that state, against the defendants,
who constitute the excise commission of Jefferson county, Ala. Its
purpose was to restrain the defendants from requiring licensed liquor
dealers in Jefferson county to abstain from selling the product of
complainant's brewery until a license of $1,500 had been paid, and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from canceling and annulling the license of such liquor dealers because of their alleged resale of the product of the complainant's brewery while said license of $1,500 remained unpaid.

The material part of section 12 of the act known as the "Smith Law," approved April 6, 1911, which regulates the sale of liquor in Alabama, where liquors are permitted to be sold, is as follows:

"That the following license taxes shall be paid: Each retail dealer in spirituous, vinous or malt liquors shall pay an annual tax of fifteen hundred dollars, except that such license tax in cities of class A shall be three thousand ($3,000.00) and in towns of less than one thousand population nine hundred dollars ($900.00). Each wholesale dealer in spirituous, vinous and malt liquors shall pay an annual tax of fifteen hundred dollars ($1,500.00). Each distillery manufacturing spirituous liquors and each brewery manufacturing beer shall pay an annual license tax of fifteen hundred dollars, but any brewery or distillery may sell its own products at wholesale without taking additional license if it has paid for a license as such brewery or distillery. Each agency of a brewery of another state doing business in this state shall pay an annual license tax of fifteen hundred dollars, and any person, whether retail dealer or not, selling the goods or product of any brewery of another state, shall be deemed and held an agent thereof, unless such brewery shall have an established agency in this state." Acts 1911, p. 257.

This section requires breweries of foreign states doing business in Alabama to pay an annual license tax of $1,500 for each agency in the state, and declares that any retail or wholesale dealer in Alabama, selling the products of any brewery of another state, would be deemed and held an agent thereof, unless the brewery had itself established an agency in the state. The complainant had no established agency in the state, but was making shipments of its products from Indiana into this state to fill its orders. It had not paid the $1,500 license.

The bill avers that the excise commission had threatened to and would cancel the wholesale or retail licenses of liquor dealers in Jefferson county unless there was paid an additional sum of $1,500 to the state, in lieu of the license not paid by the complainant. The bill asserts that this provision of section 12 of the act approved April 6, 1911, is obnoxious to section 8, art. 1, of the Constitution of the United States, and to the fourteenth amendment thereto, and void for that reason, and that irreparable injury will be done the plaintiff's business in Jefferson county, Ala., unless the defendants are restrained from the acts complained of.

The defendants base their motion to dismiss upon these grounds:

(1) They assert that the bill is without equity, because it seeks to restrain the enforcement of a criminal or penal statute of the state, and that no property rights of complainant are involved.

(2) They assert that the excise commission is a quasi judicial body, and is given unrestricted discretion with relation to the suspending or canceling of any liquor license by section 24 of the act of April 6, 1911, and that a court of equity cannot, therefore, interfere with the exercise of such discretion.

(3) They assert that section 12 of that act is valid.

[1] First. The general rule is well settled that courts of equity will not restrain threatened prosecutions for the commission of alleged crimes. Old Dominion Telegraph Co. v. Powers, 140 Ala. 220, 37

South. 195, 1 Ann. Cas. 119; Brown v. Mayor and Aldermen of Birmingham, 140 Ala. 590, 37 South. 173; Davis v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778. There is an equally well settled exception to the general rule, viz., when the injunction is sought to restrain criminal prosecutions, which would result in the invasion of the rights of property through the enforcement of an unconstitutional law, to the irreparable injury of the plaintiff. In the case of Brown v. Mayor and Aldermen of Birmingham, 140 Ala. 590–595, 37 South. 173, the Alabama Supreme Court said:

"It has been expressly decided that 'the mere fact that an act is criminal does not divest the jurisdiction of equity to prevent it by injunction, if it be also a violation of the property rights, and the party aggrieved has no other adequate remedy for the prevention of irreparable injury which will result from the failure or inability of a court of law to redress such rights.'"

In the case of Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169, it was held that:

"Where property rights will be destroyed, unlawful interference by criminal proceedings under a void law * * * may be reached and controlled by a court of equity."

The defendants' contention that the bill seeks to restrain prosecutions or threatened prosecutions for violation of state or municipal laws does not appear from the face of the bill. The only relief asked in the prayer of the bill is that the defendants be enjoined from requiring the liquor dealers of Jefferson county to abstain from selling complainant's products until the $1,500 license had been paid, and from canceling or threatening to cancel the licenses of such dealers as dealt in the product of the plaintiff while such license remained unpaid. No criminal prosecutions of the complainant or its agents are feared, or asked to be enjoined, so far as appears from the bill. It is true that the dealers, after cancellation of their licenses, if they persisted in selling liquor, would be subject to prosecutions therefor; but no such state of facts is relied upon in the bill, nor is relief against such consequences prayed for therein.

The bill shows that the wrongs complained of, if consummated by the defendants, would destroy complainant's business with the retail and wholesale liquor dealers of Jefferson county. The right to make contracts for the sale of complainant's products in Alabama is a property right, protected by section 8, art. 1, of the Constitution of the United States, and by the fourteenth amendment. The unlawful invasion of this right by a state board, though by criminal prosecutions, under color of an unconstitutional law, would, under the mentioned exception to the general rule, justify the interposition of a court of equity by an injunction, if irreparable injury was alleged as a result thereof.

The defendants further contend that a liquor license, under the laws of Alabama, is not property, but a mere privilege, citing State ex rel. Crumpton v. Excise Commission, 177 Ala. 212, 59 South. 294. However, the property right asserted by the plaintiff in this case is not based on a license, but on the right of the owner of property to

dispose of it by contract to any purchaser he may select, unimpeded by illegal restriction.

[2] Second. It is also contended by defendants that the excise commission of Jefferson county is vested by the law creating it with discretion to suspend or cancel licenses, and that their action in so doing is not appealable or reviewable in the courts. However competent it may have been for the Legislature of Alabama to have vested this power in the excise commission, free from the control of the courts of the state, it is clear that nothing that the Alabama Legislature could do would avail to make an act of the defendants, which was violative of the rights of the complainant under the Constitution of the United States, a valid one. If the canceling by the defendants of the license of dealers, because of their selling the product of the complainant, is an interference with interstate commerce, or a taking of property without due process, or a denial of the equal protection of the laws, then the Legislature of Alabama could not make it the less so by vesting in the commission the unlimited and unaccountable authority to cancel or suspend licenses. To hold otherwise would be to make the state authority paramount to the federal Constitution in matters within the exclusive jurisdiction of the federal government. That this cannot be done requires no argument.

[3] Third. The question remains whether the canceling of the licenses of wholesale liquor dealers by the excise commission because of their selling complainant's product, the agency license of $1,500 not having been paid, and as a means of compelling its payment, is violative of section 8, art. 1, of the Constitution of the United States and the fourteenth amendment to it.

The complaint is not that a license is exacted of the complainant for an agency in this state. It has no such agency, and is not, therefore, directly subjected to the license tax. The complaint is against the threatened action of the defendants in requiring an additional license of the plaintiff's Alabama customers for selling its beer after its arrival in Alabama. The effect of this section, of course, is to require the complainant either to establish an agency in Alabama itself, and pay the license tax therefor, and so relieve its customers from paying any license for selling its beer, or to pay or reimburse one of its customers for the amount of the license, thereby constituting such customer its agency, and relieving him and all others selling its product in Alabama from taking out a license. The payment of the prescribed license by complainant or any one of its customers in this state would entitle its beer to be sold by all other persons in this state free from the obligation to pay an additional agency license. The right of the state to tax an agency of a foreign brewery established in this state, if the tax does not operate as a discrimination, is not disputed.

The complaint is directed against the threatened exaction of a license from a customer of the complainant for selling its beer in Alabama. The complainant's contention is that this amounts to a tax on interstate commerce, and conflicts with section 8, art. 1, of the federal Constitution. The claim is that it is a tax on the plaintiff's right to sell its beer in Indiana to customers in Alabama, and is there-

fore a tax on its Indiana or interstate business. The license, however, is not imposed on the plaintiff at all, unless it voluntarily establishes an agency in Alabama. It is not imposed on the transaction by which the beer is sold in Indiana to the customer in Alabama. The Smith Law neither prohibits nor taxes the right of plaintiff to sell and deliver its Indiana beer to an Alabama customer. The part of section 12 of the Smith Law assailed by the bill is as follows:

"And any person, whether retail dealer or not, *selling the goods or product of any brewery of another state*, shall be deemed and held an agent thereof, unless such brewery shall have an established agency in this state."

The constructive agency does not arise unless and until the complainant's beer is resold by its Alabama customer in that state. It does not come into existence because of the Alabama customer's purchase of the complainant's Indiana beer. It becomes operative only after delivery of the Indiana beer to the Alabama customer, and upon his resale of the Indiana beer in Alabama. The Alabama customer is constituted a constructive agent only for "selling the goods or product of any brewery of another state."

It is clear that the Alabama customer could not resell the Indiana beer until it had been delivered to him by the complainant, since sale includes delivery, and the customer could not deliver to his customer until delivery had been made to him by the complainant. The question, therefore, is whether it is competent for Alabama to tax the resale in Alabama of beer shipped from Indiana after its delivery to the seller in Alabama. That this could not have been done before the passage of the Wilson and Webb-Kenyon Laws is certain. Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Robbins v. Shelby Taxing District, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694.

The Wilson Law (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [Comp. St. 1913, § 8738]) permits the state to tax the sale of intoxicating liquors after their arrival in the state, though in the original package. Arrival in the state has been construed to be delivery to the consignee. Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088. The Wilson Law gives the state the right to license the resale of liquors, imported from one state into another, after delivery to the consignee, though the original package be unbroken. There are but two qualifications to the exercise of this right: (1) The tax must be imposed for police purposes; and (2) it must not discriminate against the products of other states.

The Webb-Kenyon Law (Act March 1, 1913, c. 90, 37 Stat. 699 [Comp. St. 1913, § 8739]) prohibits the transportation of intoxicating liquors from one state to another, if intended to be used to violate a valid state law, whether a police regulation or not. Under this law the liquor is amenable to the state law before delivery to the consignee.

The case of Phillips v. Mobile, 208 U. S. 472, 28 Sup. Ct. 370, 52 L. Ed. 578, is authority for the right of the state or its municipal corporation, since the passage of the Wilson Law, to impose a nondiscriminating license tax on the seller of intoxicating liquors, made and sold to him in another state, after delivery to him in Alabama and in the original package. It is also authority for the proposition that a

license tax, imposed on the seller of intoxicating liquors, though in amount greatly in excess of the cost of administering the law, may yet be a tax imposed in the exercise of the police power of the state, and not the taxing power. Laying aside the question of discrimination, the Phillips Case is identical with this case in principle, and should control it.

That the Wilson Act applies in favor of regulatory, as well as prohibitory, state legislation, and that state legislation that would be construed as an exercise of the revenue power of the state, when relating to a subject-matter other than intoxicating liquors, will be construed as an exercise of its police power, when it relates to intoxicating liquors, has been held, also, in the cases of Vance v. Vandercook, 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100, Pabst Brewing Company v. Crenshaw, 198 U. S. 17, 25 Sup. Ct. 552, 49 L. Ed. 925, and Reymann Brewing Co. v. Brister, 179 U. S. 445, 21 Sup. Ct. 201, 45 L. Ed. 269. Under these cases, and since the passage of the Wilson Law and the Webb-Kenyon Law, the state of Alabama has the power to exact a license from the Alabama seller of beer made in another state and shipped into this state, if the license is for police purposes and works no unjust discrimination against the foreign made beer. That a license of the kind exacted of the domestic dealer in intoxicating liquors in this case may be for police purposes, is clear from the cases cited. There remains the inquiry as to whether it operates as an unjust discrimination against beer made in states other than Alabama.

The exaction of an additional license of the Alabama wholesale dealer for the privilege of selling foreign made beer, when a like license is not exacted for the sale of beer of domestic manufacture, is an evident discrimination against the seller of the foreign made beer. Welton v. State of Missouri, 91 U. S. 275, 23 L. Ed. 347; Woodruff v. Parham, 8 Wall. 123, 19 L. Ed. 382; Tierman v. Rinker, 102 U. S. 123, 26 L. Ed. 103; Kehrer v. Stewart, 197 U. S. 61, 25 Sup. Ct. 403, 49 L. Ed. 663; Powell v. State, 69 Ala. 10; McCreary v. State, 73 Ala. 480. If the Alabama wholesale dealer was the complainant, and there was no more in the case, his right to relief would be clear. However, in this case the complainant is the foreign brewer, and the question of discrimination is therefore to be determined with reference to it rather than to the local dealer.

The right of the state to impose a license tax on the agencies of foreign breweries established in Alabama is incidentally involved, in the question of discrimination, as it relates to the complainant. If the imposition of such a license is legal and nondiscriminatory, then the complainant, by establishing the agency and paying the license, can put the sale of its beer on a parity with all beer wherever made. It can either establish an agency of its own, or by paying the agency license for one of its customers, constitute such customer its agent, and so comply with the statute, and free the sale of its beer by others of license obligations. It is conceded that the doing of business by complainant in Alabama through a resident agent is an occupation that may be taxed by Alabama, if it works no unjust discrimination against the for-

225 F.—14

eign, as compared with the domestic, business. The question is whether the exaction of a license of $1,500 for the privilege of selling its foreign-made beer in Alabama, whether through its own agency, or the constructive agency of its customer, created by the statute, is unjustly discriminatory to complainant.

The gist of the statutory requirement is the payment of a license tax of $1,500. The question is whether the complainant, not its customers, is unjustly discriminated against by the exaction of such a license tax. Section 12 of the Smith Law imposes a tax on domestic brewers of $1,500 for the privilege of making and selling their beer in Alabama. The purpose of the exaction of the $1,500 license tax on agencies of foreign breweries seems to have been to put them on a parity, as to amount of license paid for marketing their product, with domestic brewers. Each is required to pay the state $1,500 for the privilege of marketing their product. It is in the power of the complainant to obtain the privilege of having its beer sold anywhere in Alabama by any person by paying the state that amount. The domestic brewer is required to pay to the state the same amount before selling its product in Alabama. There is, therefore, no discrimination against beer produced in other states, or against the person who produces it, in the license requirement. It is true that, if a wholesale dealer is required to pay the additional license of $1,500 for selling foreign-made beer, he suffers a discrimination as against the dealer who sells domestic beer only, and might be entitled to complain of the exaction as a discriminatory one. The complainant in this case, however, suffers no discrimination, since it is open to it to market its product in Alabama on the same terms, as respects license, as does the domestic brewer.

It is true that the complainant may be compelled to pay a tax in the state where its beer is manufactured for the privilege of making it. It is true that the domestic brewer in Alabama acquires by the payment of the license the privilege of making the beer in Alabama as well as that of selling it, which the foreign brewer does not avail of. Each is privileged to market its beer in Alabama for a license fee of $1,500.

In the case of Reymann Brewing Co. v. Brister, 179 U. S. 445, 21 Sup. Ct. 201, 45 L. Ed. 269, the Supreme Court held a license tax of Ohio a valid exercise of the police power and nondiscriminatory. The Ohio statute taxed the business of selling beer at each place where the business was carried on, while permitting the manufacturer to sell at the place of manufacture, upon paying only the manufacturer's license. The court said (179 U. S. 451, 452, 21 Sup. Ct. 203, 45 L. Ed. 269):

"The effect of this is claimed to be that the domestic manufacturer may sell liquor, in quantities of one gallon or more, at the place of manufacture without being subjected to the tax, and that thus he has an advantage over the foreign manufacturer, who can only sell, in Ohio, at some other place than the place of manufacture, and is thereby subjected to the tax. In other words, while the domestic manufacturer must pay the tax if he sells at other places than the place of manufacture, yet as he is declared not to be within the act in selling at the place of manufacture in quantities of not less than one gallon at any one time, such a provision operates as an illegal discrimination against the foreign competitor, who must necessarily sell at places other than the place of manufacture."

The court disposed of this contention in these words (179 U. S. 452, 21 Sup. Ct. 203, 45 L. Ed. 269):

"Under this provision, the manufacturers, whether within or without the state, may sell at the manufactory and ship to any part of the state of Ohio, and the incidental disadvantage that the foreign manufacturer is under that if, instead of selling at the place of his plant, he wishes to establish a place within the state of Ohio, he is obliged to pay the tax, does not appear to arise out of any intention on the part of the state Legislature to make a hostile discrimination against foreign manufacturers."

So, in this case, the incidental disadvantage the foreign brewer may be under by reason of having to pay a manufacturer's tax in another state "does not appear to arise out of any intention on the part of the state Legislature to make a hostile discrimination against foreign manufacturers." On the contrary, the purpose appears to be to equalize the license in Alabama as to each class for the sale of its product. Applying the test applied by the Supreme Court in the Reymann Brewing Company Case, 179 U. S. 452, 21 Sup. Ct. 201, 45 L. Ed. 269, the foreign brewer, by establishing a brewery in Alabama, can both manufacture and sell for a $1,500 license fee, and, if the Alabama brewer locates its brewery out of Alabama, it suffers the same incidental disadvantage as does the foreign brewer.

I conclude that the portion of section 12 of the Smith Law assailed is not unjustly discriminatory as against the foreign manufacturer, with whose interest this case is only concerned, and that it is a valid exercise of the police power of the state of Alabama and a permissible regulation by the state of the sale of intoxicating liquors shipped from other states under the Wilson and Webb-Kenyon Laws.

If the license fee is exacted of the wholesale dealer unjustly, the complaint should be presented in a suit in which the person who suffers the unjust discrimination is the complainant. The present complainant, suffering no unjust discrimination, has no cause of complaint.

For these reasons, the bill is ordered dismissed for want of equity, and the plaintiff is taxed with the costs.