**YOUNG'S MARKET CO. et al. v. STATE BOARD OF EQUALIZATION OF CALIFORNIA et al.**
No. 736–H.

District Court, S. D. California, Central Division.
Sept. 21, 1935.

Meserve, Mumper, Hughes & Robertson (by Baldwin Robertson), of Los Angeles, Cal., and M. J. Donnelly, of Chicago, Ill., for plaintiffs.

U. S. Webb, Atty. Gen. (by Eugene M. Elson, Deputy Atty. Gen.), for defendants.

Before WILBUR, Circuit Judge, and HOLLZER and STEPHENS, District Judges.

PER CURIAM.

Plaintiffs bring this suit both on their own behalf and also for the benefit of all others similarly situated, to enjoin the enforcement of certain provisions of a statute recently enacted by the Legislature of the State of California, and known as the "Alcoholic Beverage Control Act" (St. Cal. 1935, c. 330).

The provisions here under attack impose a "beer importer's" license tax of $500 per year, define an "importer" as "every person who, in the case of alcoholic beverages brought into this State from outside of this State, is the first in possession thereof in this State after the act of importation is completed," also empower certain state officials to collect this tax, and to institute proceedings, civil and criminal, for any failure to pay such license tax, authorize the imposition of penalties for such failure, also empower certain state officials to seize and dispose of the property of the beer importer who fails to pay such license tax, also prohibit common and private carriers from delivering imported beer to any importer failing to pay such license tax. These provisions further require the payment of a like tax for each of the premises of any business establishment having more than one location.

Upon commencement of this suit an order was issued, directing the defendant officials to show cause why the enforcement of the above-mentioned provisions of the act should not be enjoined and at the same time a temporary restraining order was issued.

The defendants have responded by interposing a motion to dismiss and, in addition, have filed a pleading which has been denominated as a return to the order to show cause.

At the hearing, counsel stipulated that the application for an injunction pendente lite and also the cause on its merits be submitted on the pleadings. In view of the statements made by the counsel at such hearing, we have concluded that the material allegations of fact set forth in the bill of complaint are not in controversy and that the only issues raised by the return to the order to show cause are issues of law.

For more than a year past, each of the plaintiffs has been, and still is, engaged in the business of importing beer into this state from either Wisconsin or Missouri.

In addition to the provisions hereinbefore noted, the statute in question prohibits any person engaging in business as a broker, jobber, or wholesale merchant, dealing in alcoholic beverages, unless he shall have secured a license so to do from the defendant State Board of Equalization, and also prescribes an annual license tax of $50 for such license to sell beer at wholesale. A like charge is made for each separate establishment maintained by such wholesaler.

All of the plaintiffs are "wholesalers" of beer and have secured the requisite licenses to engage in such business in this state.

It is conceded that, under this statute, a person who engages in business as a "wholesaler" of beer manufactured in California pays annually only a $50 license tax for each establishment maintained by him in this state for that purpose; whereas, a competing "wholesaler" of beer which he imports into this state pays a like charge, and in addition is required to pay a further license tax of $500 for each establishment maintained by him for the receipt and possession of such imported beer.

One of the plaintiffs maintains, in each of twelve different cities in this state, a separate establishment to which it imports beer from Wisconsin, and for each of which premises it holds the requisite "wholesaler's" license to sell beer.

The plaintiffs, and others engaged in the business of importing beer into this state and similarly situated to them, have refused to apply for and obtain an importer's license for the various places of business at which they import and receive beer.

The defendants threaten, and unless enjoined from so doing will proceed, to enforce against plaintiffs and others similarly situated all of the provisions of said Act here under attack.

Plaintiffs contend that the provisions of the statute, the enforcement of which they here seek to enjoin, violate the commerce clause (section 8, article 1) and the equal protection clause (section 1, Amend. 14) of the Constitution of the United States.

■ Defendants assert that "since the adoption of the Twenty-First Amendment to the United States Constitution, neither the commerce clause nor the equal protection clause of the United States Constitution applies to intoxicating liquors." In addition, defendants maintain that the act in question constitutes a proper exercise of its police power by the state.

With respect to the first ground of the defense interposed herein, a similar contention was raised and held untenable in the recent case of Joseph Triner Corporation v. Arundel et al., 11 F. Supp. 145, 146, by the United States District Court in Minnesota, in a decision rendered by a three-judge court on June 29, 1935. Upon this point, the court there said: "With the contention that by this language it was intended that intoxicating liquors should be excepted from the provisions of the commerce clause and other provisions of the Constitution of the United States, we are unable to agree. The purpose of the provision referred to was to make it impossible for Congress to permit the transportation or importation into any state, territory, or possession of the United States of intoxicating liquors in violation of the laws of the state, territory, or possession. In other words, the provision left the states, territories and possessions free to determine to what extent, if at all, intoxicating liquor should be a lawful subject of commerce within their limits."

We are convinced that the foregoing statement is a correct construction of the Twenty-First Amendment in its application to a state of facts such as we have in the case before us.

■ Passing now to a consideration of the remaining defense interposed herein, it is contended that even though it be held that, once the state permits the traffic in liquors within its borders, the requirements of the commerce clause as well as the equal protection clause of the Fourteenth Amendment must be adhered to, nevertheless the provisions of the law in question represent merely the exercise of the state's police power. In support of this contention it is urged:

1. "The fee imposed upon the importer in the instant case is a fee imposed for the privilege of receiving and possessing the beer brought in—imported from other states. * * * When the beer is delivered by the carriers to the plaintiffs at their respective places of business, the act of importation at that instant is completed, and the beer ceases to be a subject of interstate commerce."

Accordingly, it is argued that the statute does not contravene the commerce clause of the Federal Constitution.

2. Finally, it is claimed that under this statute importers are a class distinct from others engaged in the liquor business; that the state has set up a comprehensive system of licensing the various types of businesses arising in connection with the liquor traffic; that the license fee involved might be said to be imposed for the purpose of placing foreign beer on a parity with domestic brewers in so far as the amount of license fee for marketing the product is concerned; and accordingly it is urged that the statute

does not effect a discrimination in violation of the equal protection clause of the Fourteenth Amendment.

These two contentions may be disposed of together. As pointed out in the case of I. M. Darnell & Son Co. v. Memphis, 208 U. S. 113, at pages 119 and 120, 28 S. Ct. 247, 250, 52 L. Ed. 413: "While it is undoubted that it has been settled that where property which has moved in the channels of interstate commerce is at rest within a state and has become commingled with the mass of property therein, it may be taxed by such state without thereby imposing a direct burden upon interstate commerce, that doctrine, as expounded in the decided cases, including those relied upon by the court below, has always expressly excluded the conception that a state could, without directly burdening interstate commerce, discriminate against such property by imposing upon it a burden of taxation greater than that levied upon domestic property of a like nature."

Again in the same case, the court quoted with approval the following from the decision in Guy v. Baltimore, 100 U. S. 434, 25 L. Ed. 743: "In view of these and other decisions of this court, it must be regarded as settled that no state can, consistently with the Federal Constitution, impose upon the products of other states, brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation thereto, of the products of other states, more onerous public burdens or taxes than it imposes upon the like products of its own territory. If this were not so, it is easy to perceive how the power of Congress to regulate commerce with foreign nations and among the several states could be practically annulled, and the equality of commercial privileges secured by the Federal Constitution to citizens of the several states be materially abridged and impaired."

Among other cases relied upon as a basis for the decision in the Darnell Case was that of Webber v. Virginia, 103 U. S. 344, 26 L. Ed. 565. There the court held a license statute of Virginia to be a regulation of commerce and invalid because it required that the agent for the sale of articles manufactured in other states must first obtain a license for which he was required to pay a tax for each county in which he sold or offered to sell them, while the agent for the sale of articles manufactured in that state, if acting for the manufacturer, was not required to obtain a license or pay any license tax.

Another citation referred to with approval in the Darnell decision was the case of Walling v. Michigan, 116 U. S. 446, 6 S. Ct. 454, 457, 29 L. Ed. 691, where the court held an act of the latter state, which imposed a tax or duty on persons who, not having their principal place of business within the state, engaged in the business of selling or of soliciting the sale of certain described liquors, to be shipped into the state, to be repugnant to the commerce clause, as being "a discriminating tax levied against persons for selling goods brought into the state from other states or countries."

None of the cases cited by defendant's counsel sustain the position they have taken in the present suit. The case of American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538, was considered in the Darnell decision. It was there pointed out that the case cited did not hold that, after goods have been imported into a state, the sale of such products may be regulated by state legislation which discriminates against the same and in favor of the same kind of goods produced within the state.

In Rosenberger v. Pacific Express Co., 241 U. S. 48, 36 S. Ct. 510, 60 L. Ed. 880, also cited by defendants' counsel, the court held that a Texas statute (Laws 1907, c. 4), imposing special licenses on express companies maintaining offices for C. O. D. shipments of intoxicating liquors, was unconstitutional so far as interstate shipments were concerned.

In Evansville Brewing Association v. Excise Commission (D. C.) 225 F. 204, page 209, while it was there decided that a certain Alabama statute was not discriminatory so far as the complainant in that case was concerned, the court also said: "The exaction of an additional license of the Alabama wholesale dealer for the privilege of selling foreign made beer, when a like license is not exacted for the sale of beer of domestic manufacture, is an evident discrimination against the seller of the foreign made beer. [Citing cases.] If the Alabama wholesale dealer was the complainant, and there was no more in the case, his right to relief would be clear. However, in

this case the complainant is the foreign brewer, and the question of discrimination is therefore to be determined with reference to it rather than to the local dealer."

The most recent expression of the Supreme Court relative to the question here under consideration is to be found in the case of Baldwin et al. v. G. A. F. Seelig, Inc., 294 U. S. 511, on page 527, 55 S. Ct. 497, 502, 79 L. Ed. 1032, where the court declared: "What is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation. Formulas and catchwords are subordinate to this overmastering requirement. Neither the power to tax nor the police power may be used by the state of destination with the aim and effect of establishing an economic barrier against competition with the products of another state or the labor of its residents. Restrictions so contrived are an unreasonable clog upon the mobility of commerce. They set up what is equivalent to a rampart of customs duties designed to neutralize advantages belonging to the place of origin. They are thus hostile in conception as well as burdensome in result. The form of the packages in such circumstances is immaterial, whether they are original or broken. The importer must be free from imposts framed for the very purpose of suppressing competition from without and leading inescapably to the suppression so intended."

An examination of the provisions of the statute involved in the case before us convinces us that this law discriminates between the wholesalers of beer imported into California and the wholesalers of beer manufactured in this state, to the detriment of the former.

While, as pointed out in the Joseph Triner Case, supra, the equal protection clause of the Constitution does not prevent the state from adjusting its legislation to differences in situation, or forbid classification in that connection, "it does require that the classification be not arbitrary, but based on a real and substantial difference, having a reasonable rela-

tion to the subject of the particular legislation." See cases therein cited.

In the Joseph Triner Case the court held invalid, as being in violation of the equal protection clause, a statute of Minnesota which prohibited the sale of liquor imported into that state in a finished condition unless the brand of such liquor had been registered in the United States Patent Office, and which statute imposed no similar restriction with respect to liquor manufactured in that state. There the court said: "We are unable to see any justification for making a distinction between those who are permitted to manufacture or process liquor within the state and those who are permitted to import liquor into the state, with respect to the use of registered or unregistered brands. If the registration of brands of liquor in the Patent Office has, as is contended, some tendency to protect the public from misbranded liquor or to place responsibility for liquor sold within the state, there seems no logical reason for making the law apply only to those who import the finished product. Under chapter 390, the Minnesota manufacturer, processor, or rectifier can sell his liquor to the public under an unregistered brand, whereas the Joseph Triner Corporation and all others similarly situated are prohibited from selling liquor similar in all respects, unless their brands are registered in the Patent Office."

These views, with which we are in accord, impel us to say that there is even less justification for making the distinction, created by the provisions of the statute here in question, between the wholesalers of beer manufactured in California and those who sell beer imported into the state, with respect to the amount charged for the privilege of selling beer. These provisions are in the nature of an economic barrier attempted to be established by legislation against competition with beer imported from other states—legislation, however, which contravenes the commerce clause and the equal protection clause of the Constitution of the United States and, therefore, is invalid.

A final injunction will issue in conformity with this opinion.