In the Matter of the Application of PENNSYLVANIA GAS COMPANY, Respondent, for a Writ of Prohibition Directed to PUBLIC SERVICE COMMISSION, SECOND DISTRICT, and ALFRED C. DAVIS and Others and the CITY of JAMESTOWN, Appellants.

Third Department, September 17, 1918.

**Gas and electricity — authority of Public Service Commission to regulate rates within State for natural gas furnished by Pennsylvania company.**

The Public Service Commission has the power to regulate the rates to consumers within the State for natural gas furnished by a Pennsylvania gas company, as the gas is a local and not a national product, although its source of supply is solely in the State of Pennsylvania.

APPEAL by the defendants, Alfred C. Davis and others and the City of Jamestown, from an order of the Supreme Court, made at the Ulster Special Term and entered in the office of the clerk of the county of Ulster on the 8th day of March,

1918, directing the issuance of an alternative writ of prohibition against the appellants, commanding them to desist and refrain from taking further proceedings or action in a proceeding pending before the Public Service Commission.

*Ledyard P. Hale,* for the appellant Public Service Commission.

*Thrasher & Clapp,* for the appellants Alfred C. Davis and others.

*Cheston A. Price* [*Louis L. Thrasher,* special counsel], for the appellant City of Jamestown.

*Fisher & Fisher* [*Marion H. Fisher* and *J. E. Mullin* of counsel], for the respondent.

LYON, J.:

The question presented by this appeal is whether the Public Service Commission of the State has the power to regulate the rates to consumers, within the State, of natural gas furnished by the respondent, the Pennsylvania Gas Company.

The facts are undisputed. The Pennsylvania Gas Company is a foreign corporation engaged in transporting and selling natural gas in the States of New York and Pennsylvania. Its source of supply is solely in the State of Pennsylvania. It transports by pipe lines, about fifty miles in length, into the State of New York. It sells and delivers gas to consumers in the city of Jamestown, in the town of Ellicott, and in the village of Falconer, all within the county of Chautauqua. It also sells and delivers natural gas to consumers in the cities of Warren, Corry and Erie in the State of Pennsylvania.

Pursuant to subdivision 3 of section 8 of article 1 of the Constitution of the United States, the Congress is given power " to regulate commerce with foreign nations, and among the several States, and with the Indian tribes," and by subdivision 18 of the same section " to make all laws which shall be necessary and proper for carrying into execution the foregoing powers * * *." The Interstate Commerce Act provides that the act shall not apply to the transportation through pipe lines of natural or artificial gas. (§ 8563.)* It is conceded that Congress has

---

* See 24 U. S. Stat. at Large, 379, § 1, as amd. by 34 id. 584, § 1, and 36 id. 544, § 7; 8 U. S. Comp. Stat. 1916, p. 9053, § 8563.— [REP.

not acted, other than on August 10, 1917, when it delegated to the President the power to control the disposition of natural gas.*  It is conceded that he has not acted.  It is also conceded that the Public Service Commission has jurisdiction of the subject-matter and of the person of the respondent unless its jurisdiction is an unconstitutional restriction upon interstate commerce.  (Pub. Serv. Com. Law, § 66.)  It is also conceded that the flow of gas from one State to another State, through a pipe line, is interstate commerce.

In *Port Richmond Ferry* v. *Hudson County* (234 U. S. 317) the ferry company sought to review the action of the board of chosen freeholders of Hudson county in fixing the rates to be taken at its ferry within that county for the transportation of foot passengers for single trips to the New York terminal.  The action was taken under the authority of an act of the Legislature of New Jersey.  The ferry was from Port Richmond, S. I., N. Y., to Bergen Point, N. J., and was not operated in connection with any railroad.  The courts of New Jersey sustained the validity of the rates against the objection that they were repugnant to the commerce clause of the Federal Constitution.  (80 N. J. Law, 614; 82 id. 536.)  The United States Supreme Court affirmed the judgment, holding that the ferry company was engaged in interstate commerce; that it presents a situation essentially local requiring regulation according to local conditions; but that if Congress at any time undertakes to regulate such rates, its action will control.

In *Haskell* v. *Cowham* (187 Fed. Rep. 403) the circuit judge, eighth circuit, said: " Interstate commerce in natural gas, including therein its transportation among the States by pipe line, is a subject national in its character and susceptible of regulation by uniform rules.  The silence or inaction of Congress relative to such a subject is a conclusive indication that it intends that interstate commerce therein shall be free, and any law or act of a State or of its officers which prohibits it or substantially restrains its freedom is violative of the Constitution and void. (*Welton* v. *State of Missouri*, 91 U. S.

---

* See 40 U. S. Stat. at Large, 272, chap. 51, amdg. Interstate Commerce Act, § 1.— [REP.

275, 282.) " It will be noted that the case cited relates to discrimination in favor of goods, wares and merchandise which are the product of the State.

In *Landon* v. *Public Utilities Commission* (242 Fed. Rep. 658) the district judge, eighth circuit, held that the rates fixed were non-compensatory, unreasonably low and confiscatory, and in violation of the Constitution of the United States, and that the enforcement by the State in which sales are made of any law or regulation fixing the price to consumers which are substantially burdens upon the business or render it impossible to conduct it at a fair profit, is an undue interference with interstate commerce and in violation of the commerce clause of the Federal Constitution. It also held that action by the State in fixing rates is not warranted, and reaches the conclusion, therefore, that the intestate commerce in which the receiver is engaged is not of a local nature and is not, even in the absence of action by Congress, subject to burdens or regulations imposed by State action.

In *Manufacturers Light & Heat Co.* v. *Ott* (215 Fed Rep. 940, 944), an action brought to enjoin the Public Service Commission of West Virginia, the court said: " We are unable to agree that the fixing of the rates to be charged by complainants to their customers in West Virginia is an unlawful regulation of interstate commerce. The regulation of companies engaged in the transportation of gas is expressly excluded from the scope of the interstate commerce statute. * * * Nothing is attempted except the regulation of the prices of natural gas to the citizens of West Virginia to be charged by corporations operating in West Virginia under State authority. The action of these corporations in uniting their operations with those of like corporations of Ohio and Pennsylvania in pumping gas into a common system of pipes supplying customers in the three States, may produce the result that some gas from Ohio and Pennsylvania comes into West Virginia, although it is undisputed that a much larger quantity of gas goes out of West Virginia into Ohio and Pennsylvania than can possibly come in from these States." The court held that the complainant had failed to establish that the rates were unreasonably low and confiscatory or violated any right guaranteed by the Constitution or statutes of the

United States, and denied the application for a temporary injunction.

In *Missouri Pacific Railway* v. *Larabee Mills* (211 U. S. 612, 623) it was held that notwithstanding the creation of the Interstate Commerce Commission and the delegation to it by Congress of the control of certain matters, a State may, in the absence of express action of Congress, or by such Commission, regulate for the benefit of its citizens local matters indirectly affecting local commerce.

In *Minnesota Rate Cases* (230 U. S. 352, 402) the court says: " But within these limitations there necessarily remains to the States, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. It extends to those matters of a local nature as to which it is impossible to derive from the constitutional grant an intention that they should go uncontrolled pending Federal intervention. * * * Where the subject is peculiarly one of local concern, and from its nature belongs to the class with which the State appropriately deals in making reasonable provision for local needs, it cannot be regarded as left to the unrestrained will of individuals because Congress has not acted, although it may have such a relation to interstate commerce as to be within the reach of the Federal power."

The case seems to turn upon the question whether natural gas is a national product or a local product.

In the case of *Jamieson* v. *Indiana Natural Gas & Oil Co.* (128 Ind. 555) the court says: " Upon this point we affirm that natural gas is characteristically and peculiarly a local product, that its production is confined to a limited territory, that because of its local characteristics and peculiarities, it is a proper subject for State legislation, and cannot, so far as regards local protection, be made the subject of general legislation by Congress; or, at all events, that it does 'not require a uniform system as between the States' for its regulation."

In the case of *Ohio Oil Company* v. *Indiana, No. 1* (177 U. S. 190, 206) Mr. Justice WHITE refers approvingly to the above statement.

While it is a matter involved in some doubt, we are inclined

to believe that natural gas is a local product, and that the Public Service Commission has jurisdiction.

The order for the writ of prohibition should be reversed, and an order granted authorizing the Public Service Commission to proceed in the matter before it as if the alternative writ had not been issued, with fifty dollars costs and disbursements.

All concurred, except WOODWARD, J., not voting.

Order reversed, writ dismissed and matter remitted to the Public Service Commission for its consideration, with fifty dollars costs and disbursements.

