THE PEOPLE OF THE STATE OF. NEW YORK ex rel. PENNSYLVANIA GAS COMPANY, Relator, *v.* MARTIN SAXE and Others, State Tax Commissioners, and Composing the STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondents.

Third Department, January 15, 1919.

Tax — taxation of Pennsylvania gas company under section 186 of Tax Law — franchise tax on foreign corporation or corporation engaged in interstate commerce — Tax Law, section 186, construed — basis of taxation under said section — franchise tax.

A Pennsylvania gas company having gas wells in said State which lays mains and establishes stations in this State to bring its gas here, selling it to our citizens in competition with local dealers, is subject to a franchise tax under section 186 of the Tax Law based upon its gross earnings from all sources within the State. The mere fact that it carries its gas across the State line does not give it an advantage over domestic corporations engaged in selling gas.

A franchise tax may be required of a foreign corporation as a condition of exercising its corporate privileges in this State, without regard to whether it is engaged in interstate or foreign commerce.

Section 186 of the Tax Law measures the amount of compensation to be paid to the State for the privilege of doing business as a corporation in part by earnings and part by excess dividends, and is applicable to a foreign corporation or one engaged in interstate commerce.

In construing a general tax law the court will not seek to overthrow it by captious objections, but will apply to it the familiar rule that every intendment is in favor of the legality of the act.    The spirit and not its words are controlling.

Although section 186 of the Tax Law provides that the tax " shall be " a certain per cent of the gross earnings, it is clear from the other provisions of the statute that the earnings and the excess dividends are to be considered merely as a basis or measure for computing the value of the right to do business in the State.

The tax under said section is a franchise tax.

H. T. KELLOGG and WOODWARD, JJ., dissented, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 21st day of August, 1916, directed to Martin Saxe and others, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in assessing the tax against the relator pursuant to section 186 of chapter 62 of the Laws of 1909, being the Tax Law (Consol. Laws, chap. 60), based upon its gross earnings from all sources within the State of New York for the years ending October 31, 1911, 1913, 1914 and 1915, respectively.

*Kenefick, Cooke, Mitchell & Bass* [*Daniel J. Kenefick* and *Clarence W. Roberts* of counsel], for the relator.

*Merton E. Lewis, Attorney-General* [*C. T. Dawes, Deputy Attorney-General,* of counsel], for the respondents.

JOHN M. KELLOGG, P. J.:

The form which a transaction assumes often creates temporary embarrassment to the court, but when the substance of the transaction is known the difficulties disappear.    The substance is the matter for real consideration.

If the relator were a New York State corporation, engaged in interstate commerce, the tax would be a valid franchise tax.    (*Horn Silver Mining Co.* v. *New York,* 143 U. S. 305; *Kansas City Railway* v. *Kansas,* 240 id. 227; *Maine* v. *Grand Trunk R. Co.,* 142 id. 217; *American Refrigerator Transit Co.* v. *Hall,* 174 id. 70; *People ex rel. Pennsylvania R. R. Co.* v. *Knight,* 171 N. Y. 354; 192 U. S. 21.)

" The right and privilege, or the franchise, as it may be termed, of being a corporation, is of great value to its members, and is considered as property separate and distinct from

the property which the corporation itself may acquire. According to the law of most States this franchise or privilege of being a corporation is deemed personal property, and is subject to separate taxation. * * * However it may be regarded, it is the condition upon which a foreign corporation can do business in the State, and in doing such business it puts itself under the law of the State, however that may be characterized." (*Horn Silver Mining Co.* v. *New York, supra,* 313, 315.)

In *Maine* v. *Grand Trunk R. Co.* (*supra*) a franchise tax based upon gross receipts of the railroad engaged in interstate commerce was upheld. The reasoning of the court applies with great force to this case.

Chief Judge Cullen, in *People ex rel. Cornell Steamboat Co.* v. *Sohmer* (206 N. Y. 651), says that a franchise tax " ' is levied on the corporation for the privilege, as the statute declares, of carrying on its business in a corporate or organized capacity; not of doing business, but of doing business in a corporate capacity; ' in other words, exclusively for the privilege of being a corporation instead of a partnership. And the additional franchise tax required by section 184 is, in my opinion, exactly of the same character. I doubt whether in the true sense of the term it is to be considered a tax, but should not rather be deemed a compensation exacted for the privilege which the State might refuse. If the parties beneficially interested in the appellant are dissatisfied with the price exacted by the State they may have the corporation dissolved and as individuals carry on the same business that is being done now without the cost of any such charge." (Affd., 235 U. S. 549.)

The question, then, is whether the fact that the relator is a foreign corporation, incapable of doing business in this State without the permission of the State, can exercise its franchise without the payment of the same franchise tax exacted from State corporations engaged in the same business. In this view the relator is not seeking relief from a discrimination made against it, but is seeking to establish that a discrimination must be made in its favor, giving it an advantage over State corporations engaged in a similar business.

That a franchise tax may be required of a foreign cor-

poration, as a condition of exercising its corporate privileges in this State, without regard to whether it is engaged in interstate or foreign commerce, must be conceded. (*New York State* v. *Roberts*, 171 U. S. 658.) We quote from that case from pages 662 and 663: " If the object of the law in question was to impose a tax upon products of other States, while exempting similar domestic goods from taxation, there might be room to contend that such a distinction was constitutionally objectionable as tending to affect or regulate commerce between the States. But we think that obviously such is not the purpose of this legislation. * * * It will be perceived that the tax is prescribed as well for New York corporations as for those of other States. * * * So that it is apparent that there is no purpose disclosed in the statute either to distinguish between New York corporations and those of other States to the detriment of the latter, or to subject property out of the State to taxation."

The Franchise Tax Law in this State has been a gradual growth, and the present law is the result of many years experience. Section 186 of the Tax Law, now under consideration, is not an isolated statute attempting to get at non-resident corporations or interstate business, but is part of the general tax scheme and applies to all corporations, no matter where organized or what business they were transacting. The basis of the scheme was equality and fairness to all. By section 180 an organization tax is required of a domestic corporation, and by section 181 a license tax, for the first year, is required of foreign corporations, thus putting foreign and domestic corporations upon a substantial equality. Section 182 imposes a general franchise tax upon all corporations, to be computed upon the basis of the amount of capital employed in the State during the preceding year. Section 183 exempts from the payments required by section 182 certain corporations and provides for them in following sections. It is evident that there are cases where it is difficult to appraise the value of the right to do business in a corporate name, and it is usually recognized that such value may properly be measured by the amount of capital stock employed and the dividends declared thereon or upon the results which flow from the business which the Legislature permits to be carried on by an artificial person.

32    People ex rel. Pennsylvania Gas Co. *v.* Saxe.

Third Department, January, 1919.    [Vol. 186.

Section 182, in using the capital employed in the State as a measure, does not refer to the capital to be employed during the tax year, because that is uncertain at the time the tax is levied, but as a convenient basis measures the tax by the capital employed during the preceding year. In these cases the capital stock is not taxed as capital stock, or the earnings taxed as earnings, or the dividends as dividends, but they are used solely as measures for arriving at the value of the right to do business. Section 186, now under review, is a part of the general scheme, and measures the amount of compensation to be paid to the State for the privilege of doing business as a corporation in part by earnings and part by excess dividends. There is nothing in the act from which it can be spelled out that a foreign corporation, or one engaged in interstate commerce, is treated in any other way than a domestic corporation engaged in domestic business. The legislation must be assumed to have been enacted in good faith and for no ulterior purposes.

A corporation engaged in interstate commerce is not for that reason exempt from local taxation. It is subject to the same property and franchise tax as other corporations. (*International Text Book Co.* v. *Tone*, 220 N. Y. 313.)

In construing a general tax law the court will not seek to overthrow it by captious objections, but will apply to it the familiar rule that every intendment is in favor of the legality of the act. The spirit of the statute and not its words is controlling. The real question in these cases always is, was an unfair discrimination intended against interstate commerce? Is the relator's gas taxed because it is moved from one State to another, or is the relator paying the same franchise tax that every other corporation engaged in a like business is paying? (*Reymann Brewing Co* v. *Brister*, 179 U. S. 445; *Armour & Co.* v. *Virginia*, 246 id. 1.) We may quote with profit the concluding words of Chief Justice White's opinion in the latter case: " In other words, to resume, the error of the argument results from confounding the direct burden necessarily arising from a statute which is unconstitutional because it exercises a power concerning interstate commerce not possessed or because of the unlawful discriminations which its provisions express or by operation

necessarily bring about and the indirect and wholly negligible influence on interstate commerce, even if in some aspects detrimental, arising from a statute which there was power to enact and in which there was an absence of all discrimination, whether express or implied as the result of the necessary operation and effect of its provisions. The distinction between the two has been enforced from the beginning as vital to the perpetuation of our constitutional system. Indeed, as correctly pointed out by the court below, that principle as applied in adjudged cases is here directly applicable and authoritatively controlling. [*New York State* v. *Roberts,* 171 U. S. 658; *Reymann Brewing Co.* v. *Brister,* 179 U. S. 445.] In saying this we have not overlooked or failed to consider the many cases cited in the argument at bar on the theory that they are to the contrary, when in fact they all rest upon the conclusion that a direct burden on interstate commerce arose from statutes inherently void for want of power or if within the power possessed were intrinsically repugnant to the commerce clause because of discriminations against interstate commerce which they contained."

Any tax against a corporation affects its business, lessens its property and naturally increases the sale price of its commodities. Those considerations are, however, incidents following from the fact of taxation. If waterworks companies, gas companies, electric or steam heating, lighting and power companies had not been exempted from section 182, and the relator had been taxed under that section, there could be no reasonable question as to the validity of the tax. If section 186 had contained the provision found in section 182 that the tax is to be computed upon the basis of the earnings and excess dividends, there could be no question about its validity. The language used in section 186, under which this tax is imposed, is perhaps unfortunate in saying that the tax " shall be " a certain per cent upon the gross earnings instead of providing that it shall be computed upon the basis of, or shall be measured by the gross earnings and excess dividends. But the intent of the statute is clear, and the section cannot be destroyed by the unfortunate expression when the other provisions of the statute make it clear that the earnings

and the excess dividends were to be considered merely as a basis or measure for computing the value of the right to do business in the State.

It is not seriously contended that the tax is excessive, or that it is more than would have fallen upon the relator if it had not been excepted from the provisions of section 182. The business of bringing gas into the State and selling it cannot be prevented or hampered by State law. The relator had the right to form a corporation in this State for the handling and sale of the gas, but it chose to pay for the privilege of handling the gas as a foreign corporation. It is quite immaterial to it, or to the State, whether it pays for the privilege of furnishing the gas as a domestic or as a foreign corporation; it pays only because the State permits an artificial person to transact business in this State and because the relator felt that it was for its interest to purchase from the State that right. In construing this statute we must apply the familiar rule of judging it by the company it keeps, and the general tenor of the Tax Law makes it clear that no burden is cast upon the business or earnings, but that they are used solely as a measure for determining, in a reasonable and just way, what the privilege acquired from the State is worth?

In *Galveston, Harrisburg, etc., R. Co.* v. *Texas* (210 U. S. 217) the court says (pp. 225, 227): " It being once admitted, as of course it must be, that not every law that affects commerce among the States is a regulation of it in a constitutional sense, nice distinctions are to be expected. Regulation and commerce among the States both are practical rather than technical conceptions, and, naturally, their limits must be fixed by practical lines. As the property of companies engaged in such commerce may be taxed, *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, and may be taxed at its value as it is, in its organic relations, and not merely as a congeries of unrelated items, taxes on such property have been sustained that took account of the augmentation of value from the commerce in which it was engaged. *Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194; S. C.,* 166

---

* *Adams Express Co.* v. *Kentucky.*— [REP.

U. S. 171; *Fargo* v. *Hart,* 193 U. S. 490, 499.   So it has been held that a tax on the property and business of a railroad operated within the State might be estimated *prima facie* by gross income, computed by adding to the income derived from business within the State the proportion of interstate business equal to the proportion between the road over which the business was carried within the State to the total length of the road over which it was carried.   *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379.   *   *   *

" ' By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution.' *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 697. See *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania,* 158 U. S. 431, 438, 439.   The question is whether this is such a tax.   It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction.   The State must be allowed to tax the property and to tax it at its actual value as a going concern.   On the other hand the State cannot tax the interstate business.   The two necessities hardly admit of an absolute logical reconciliation.   Yet the distinction is not without sense.   When a Legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce.   A practical line can be drawn by taking the whole scheme of taxation into account.   That must be done by this court as best it can.   Neither the State courts nor the Legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect.   If it bears upon commerce among the States so directly as to amount to a regulation in a relatively immediate way, it will not be saved by name or form.   *Stockard* v. *Morgan,* 185 U. S. 27, 37; *Asbell* v. *Kansas,* 209 U. S. 251, 254, 256."

The relator has acquired from the State the valuable property right, which the State was not bound to concede, but which it was willing to give for a consideration.   The relator has agreed to pay the consideration, and section 186 of the

Tax Law provides the manner in which the compensation is to be measured for the privilege granted. It is not a tax upon earnings or excess dividends, but the value of the franchise granted is measured by the results flowing from the franchise. The earnings and excess dividends are mere measures used to arrive at the just value.

Clearly the tax in question is a franchise tax. In speaking of such a tax in *Home Insurance Co.* v. *New York* (134 U. S. 594, 600) Justice FIELD said: " The validity of the tax can in no way be dependent upon the mode which the State may deem fit to adopt in fixing the amount for any year which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows."

*People ex rel. Pennsylvania R. R. Co.* v. *Wemple* (138 N. Y. 1) is not in our way. There the relator operated a ferry from its terminal in New Jersey to the docks at New York city. It transacted no other business in the State except to load and unload at the dock its passengers and freight in interstate commerce. The tax was not a franchise tax, but was levied under " An act to provide for raising taxes for the use of the State upon certain corporations, joint-stock companies and associations." (Laws of 1880, chap. 542, as amd.) The court did not feel called upon to determine whether the relator could be excluded from the State in the particular business it was carrying on, but said that there was no attempt to exclude it; it was doing the business by comity alone and not by permission of the State. Chapter 240 of the Laws of 1895 and section 181 of chapter 908 of the Laws of 1896 and section 181 of the present law were thereafter passed, requiring a foreign corporation to pay a franchise and license tax for the privilege of doing business in this State in a corporate capacity. A foreign vessel upon the waters of the United States is unloading its foreign cargo at a dock with the permission of the owner in the city of New York. It is evident that the State cannot tax it for the privilege of doing business in this State or in any other way. Here the relator has gas wells in Pennsylvania. It lays mains and establishes stations in the State of New York to bring its

gas here, selling it to our citizens in competition with local dealers. It cannot be said that the mere fact that it carries its gas across the State line gives it an advantage over domestic corporations engaged in selling gas. I favor confirmation.

All concurred, except H. T. KELLOGG, J., dissenting, with an opinion in which WOODWARD, J., concurred.

H. T. KELLOGG, J. (dissenting):

This is a certiorari proceeding to review assessments of taxes against the relator, made pursuant to section 186 of chapter 62 of the Laws of 1909, being the Tax Law (Consol. Laws, chap. 60), based upon its gross earnings, and upon excess dividends declared during the years ending October 31, 1911, October 31, 1913, October 31, 1914, and October 31, 1915. The law under which the tax was assessed reads as follows: " Franchise tax on water-works companies, gas companies, electric or steam heating, lighting and power companies. Every corporation, joint-stock company or association formed for supplying water or gas, or for electric or steam heating, lighting or power purposes, shall pay to the State for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this State, an annual tax which shall be five-tenths of one per centum upon its gross earnings from all sources within this State, and three per centum upon the amount of dividends declared or paid in excess of four per centum upon the actual amount of paid-up capital employed by such corporation, joint-stock company or association. The term ' gross earnings ' as used in this section means all receipts from the employment of capital without any deduction." Under protest relator paid to the State Treasurer $7,994.60, being five-tenths of one per centum upon its total gross earnings of $1,598,921.06 during the years given, and $4,964.46, being three per centum upon the amount of dividends in excess of four per centum paid out during such years.

The relator is a foreign corporation organized under the laws of the State of Pennsylvania. It produces, and purchases natural gas produced, from the natural gas fields of the State of Pennsylvania, and transports and distributes

38    People ex rel. Pennsylvania Gas Co. *v.* Saxe.

Third Department, January, 1919.        [Vol. 186.

the same, through a system of pipe lines, to consumers in the State of New York. It produces no gas within the State of New York, and neither purchases, sells nor distributes any gas so produced, but deals exclusively in natural gas piped from Pennsylvania. All of the gas distributed by it reaches its consumers in the course of a continuous, uninterrupted transportation, directly from the Pennsylvania gas fields to the New York buildings where the same is burned. From the time that the gas leaves the fields to the moment of its ignition and consumption, it remains a subject of interstate commerce. (*Oklahoma* v. *Kansas Nat. Gas Co.*, 221 U. S. 229; *Matter of Pennsylvania Gas Company*, 184 App. Div. 556.) We have, therefore, a case in which the gross earnings and dividends taxed through percentage assessments thereon, were derived from interstate commerce.

A State may impose upon a corporation of its own creation a tax or charge for a corporate franchise bestowed, and may measure the charge by the volume of the capital of its corporate creature however and whenever that capital may be invested. In *Home Insurance Co.* v. *New York* (134 U. S. 594), a New York corporation under a New York statute, for the privilege of doing business in a corporate capacity, was required to pay a franchise tax equal to a certain per cent of its capital stock. Although the greater part of the capital of the corporation was invested in non-taxable United States bonds, it was nevertheless held that the tax was properly measurable thereby. Mr. Justice Field, writing for the court, said: " No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows." In *Kansas City Railway* v. *Kansas* (240 U. S. 227) a railroad corporation organized under the laws of Kansas was held to be subject, under a law of Kansas exacting license fees from domestic corporations, to a tax measured by a percentage upon its corporate capital, though that capital was invested in railways extending into several States. Mr. Justice Hughes said: " In the present case, the tax is not laid upon transactions in interstate commerce, or upon receipts from interstate commerce either separately or intermingled with other receipts. It does not fluctuate with the volume

of interstate business. It is not a tax imposed for the privilege of doing an interstate business. It is a franchise tax — on the privilege granted by the State of being a corporation." We are dealing here with a tax upon a foreign corporation, not a domestic corporation, and, therefore, not with a franchise tax.

Whether a State may exact a license fee, occupational or excise tax from a foreign corporation, for the privilege of doing business within its borders, to be measured in part by a percentage upon capital employed by it beyond the boundaries of the taxing State, or in interstate commerce, is a question of some difficulty which has been variously answered. The cases which hold such a tax to be permissible are grounded upon the proposition that a State, having the absolute right to exclude foreign corporations from doing business within its borders, may exact, for the privileges granted them, whatever it chooses, measured by any formula which it may select. In *Paul* v. *Virginia* (8 Wall. 168) it was said of the States: " They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." In *Horn Silver Mining Co.* v. *New York* (143 U. S. 305) a tax assessed under a New York statute for the privilege of doing business within that State against a mining corporation employing its capital chiefly in the State of Utah, on the basis of a percentage upon its entire capital, was held to be legal. In this case, however, it was said by Mr. Justice FIELD that the following qualification existed in respect to taxing foreign corporations for doing business within the borders of the taxing State: " One of these qualifications is that the State cannot exclude from its limits a corporation engaged in interstate or foreign commerce." In *People* v. *Equitable Trust Co.* (96 N. Y. 388) it was held that under a statute of the State of New York a percentage tax upon all the capital of a foreign corporation, employing its capital chiefly in other States, was properly imposed for the privilege conferred upon it of doing business within the State of New York. The court in that case

remarked that the tax thus imposed was in some respects
" arbitrary, oppressive and unjust." It may be observed that
since this decision our statutes have been amended so that the
tax under consideration in that case is now measured by capital
employed solely within the State. (Laws of 1909, chap. 62,
§ 182.) In *New York State* v. *Roberts* (171 U. S. 658) the
statute considered in *People* v. *Equitable Trust Co.* (*supra*)
was again under consideration, and the same conclusion as to
its validity was reached. The same holding seems also to have
been made in *Baltic Mining Co.* v. *Massachusetts* (231 U. S. 68).
On the other hand, it was held in *Leloup* v. *Port of Mobile*
(127 U. S. 640) that a telegraph corporation doing business
in the various States of the Union could not be penalized for
doing in the State of Kansas an intrastate and interstate
business, when it had not paid a license tax under the laws of
that State therefor. Mr. Justice BRADLEY said: " The
question is squarely presented to us, therefore, whether a State,
as a condition of doing business within its jurisdiction, may
exact a license tax from a telegraph company, a large part
of whose business is the transmission of messages from one
State to another," and " Ordinary occupations are taxed
in various ways, and, in most cases, legitimately taxed. But
we fail to see how a State can tax a business occupation
when it cannot tax the business itself. Of course, the exaction
of a license tax as a condition of doing any particular busi-
ness, is a tax on the occupation; and a tax on the occupa-
tion of doing a business is surely a tax on the business."
In *Allen* v. *Pullman Co.* (191 U. S. 171) a license tax
assessed, pursuant to a statute, against a sleeping car corpora-
tion, for the privilege of doing business within a State, on
a basis of the cars employed by it within the State, was held
illegal. In *Western Union Telegraph Co.* v. *Kansas* (216
U. S. 1, 34) the State of Kansas sought to enjoin a telegraph
company, doing business in the various States of the Union,
from maintaining any offices in that State because of its
failure to pay to the State a fee to be determined by a per-
centage upon its entire capital stock. Mr. Justice HARLAN,
writing for the court, answered in the negative a question
which he propounded as embodying the issue in the case.
" Whatever may be the extent of the State's authority over

intrastate business, was it competent for the State to require that the telegraph company — which surely had the right to enter and remain in the State for interstate business — as a condition of its right to continue doing domestic business in Kansas should pay, in the form of a fee, a specified per cent of its capital stock representing the interests, property and operations of the company not only in Kansas, but throughout the United States and foreign countries? " If, as was held in this case, and in *Leloup* v. *Port of Mobile* (*supra*), a telegraph company doing both an intrastate and interstate business, could not be excluded from maintaining offices within the State where such business was done, for failure to pay a license fee for doing intrastate business therein, how then could this relator be excluded from conducting an interstate business within this State? And if it could not be so excluded, how could it be charged for the privilege of doing such business herein when that privilege is enjoyed as a matter of right?

When we come to the question whether a license fee, occupational tax, or excise tax, measured by the gross receipts of a foreign corporation engaged in interstate commerce, can be exacted from such a corporation for the privilege of doing business within a particular State, we find a less difficult problem. Such a tax clearly falls directly upon a subject of interstate commerce, and, therefore, upon interstate commerce itself. It fluctuates with the volume of interstate business, with the rise and fall in prices of commodities shipped between States, and when such commodities are sold it immediately attaches to the proceeds, and seizes a fractional portion thereof. That a tax so measured is not constitutional has been held almost without exception. In *Fargo* v. *Michigan* (121 U. S. 230), a percentage tax imposed by a State on the gross receipts of a transportation company employing cars for interstate transportation was held to be illegal. In *Philadelphia Steamship Co.* v. *Pennsylvania* (122 U. S. 326) a percentage tax imposed by a State upon the gross receipts of a steamship company plying between States was held to be illegal. In *Ratterman* v. *Western Union Telegraph Company* (127 U. S. 411) a percentage tax imposed by a State upon the receipts of a telegraph company engaged in interstate commerce was held to be illegal. In *Lyng* v.

42    People ex rel. Pennsylvania Gas Co. v. Saxe.

Third Department, January, 1919.        [Vol. 186.

*Michigan* (135 U. S. 161) a tax upon sales of liquor at wholesale while remaining the subject of interstate commerce was held to be illegal.   In *Maine* v. *Grand Trunk R. Co.* (142 U. S. 217) the holding in the case of *Philadelphia Steamship Co.* v. *Pennsylvania* (*supra*) was approved.   In *Galveston, Harrisburg, etc., R. Co.* v. *Texas* (210 U. S. 217) it was said of the same case:   " In *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, it was decided that a tax upon the gross receipts of a steamship corporation of the State, when such receipts were derived from commerce between the States and with foreign countries, was unconstitutional.  We regard this decision as unshaken, and as stating established law."   In that case a tax imposed by a State upon all railway companies, which was equal to one per cent of their gross receipts, was held to be illegal.   In *Oklahoma* v. *Wells, Fargo & Co.* (223 U. S. 298) it was held that a tax on gross receipts from all sources, when the corporation taxed did both an interstate and an intrastate business, was illegal.   In *Minnesota Rate Cases* (230 U. S. 400) Mr. Justice Hughes said:   " Thus, the States cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it."   In *Kansas City Railway* v. *Kansas* (240 U. S. 227) it was said by Mr. Justice Hughes:   " It must be assumed, in accordance with repeated decisions, that the State cannot lay a tax on interstate commerce ' in any form,' by imposing it either upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts as such derived from it."   In the case of *Crew Levick Co.* v. *Pennsylvania* (245 U. S. 292) a statute of the State of Pennsylvania which required every wholesale vender of goods, wares and merchandise to pay a tax of one-half mill on every dollar of gross business transacted annually was held to be unconstitutional.   Mr. Justice Pitney, writing for the court, said:   " It bears no semblance of a property tax, or a franchise tax in the proper sense; nor is it an occupation tax except as it is imposed upon the very carrying on of the business of exporting merchandise.   It operates to lay a direct burden upon every transaction in commerce by withholding, for the use of the State, a part of every dollar received in such trans-

actions." The language thus used is singularly applicable to the present discussion.

It may be said in the case before us that the tax imposed is not such a tax, for the reason that the statute imposing it denominates it a " Franchise tax," and imposes it upon a corporation " for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this State." In nearly all the cases above cited, which deal with taxes measured by gross receipts, the taxes were expressly imposed for the privilege of doing business within the State where laid. The suggestion finds its answer in *Galveston, Harrisburg, etc., R. Co.* v. *Texas* (*supra*) where Mr. Justice HOLMES said: " Neither the State courts nor the Legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect. If it bears upon commerce among the States so directly as to amount to a regulation in a relatively immediate way, it will not be saved by name or form." And in *Kansas City Railway* v. *Kansas* (240 U. S. *supra*), where Mr. Justice HUGHES says: " And, further, in determining whether a tax has such a direct relation to inter-state commerce as to be an exercise of power prohibited by the commerce clause, our decision must regard the substance of the exaction — its operation and effect as enforced — and cannot depend upon the manner in which the taxing scheme has been characterized."

It is contended that this court, having held in *Matter of Pennsylvania Gas Company* (184 App. Div. 556) that the charges of relator for gas sold to customers in the State of New York are subject to regulation by a Public Service Commission of the State, must necessarily hold that the relator is subject to taxes upon its gross receipts derived from such charges. This argument fails to note the dis-tinction between local regulation of interstate commerce, per-missible in certain instances, and local taxation of interstate commerce, which is never permissible. This court rested its decision in the case referred to, among other authorities, upon *Port Richmond Ferry* v. *Hudson County* (234 U. S. 317), where it was held that local authorities in the State of New Jersey could, under a statute of that State, regulate the fares charged

for passengers by a ferry company plying between Bergen Point, N. J., and Staten Island, N. Y., for trips to and fro between the States. The court stated that the interstate commerce involved was of a character, in default of congressional action, to permit and require local regulations of rates. It, nevertheless, made the following statement: " It necessarily follows that whatever may properly be regarded as a direct burden upon interstate commerce, as conducted by ferries operating between States, it is beyond the competency of the States to impose. This was definitely decided in *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196." In the case thus referred to a tax imposed upon interstate ferries, on the basis of their corporate stock, was held to be illegal, the court saying: " It [the ferry] must, therefore, be conducted without the imposition by the States of taxes or other burdens upon the commerce between them. Freedom from such impositions does not, of course, imply exemption from reasonable charges, as compensation for the carriage of persons, in the way of tolls or fares." The reasons advanced in these authorities, on the one hand justifying local regulation, and on the other forbidding local taxation, of interstate commerce, in an identical instance, apply with full force to the cases of taxation and regulation involving this relator which we have considered.

In so far, therefore, as the assessments consisted of sums determined by a percentage upon the gross earnings of the relator they were illegal. In arriving at this conclusion it is not necessary to determine whether " gross earnings from all sources within this State," as used in section 186 of the Tax Law, include " gross earnings," which, though received within the State, actually have their source in interstate commerce. If they are so included we have an unconstitutional act authorizing a tax directly upon interstate commerce. If they are not so included, the assessments are illegal because not within the statute. In so far as the assessments consist of sums determined by a percentage upon excess dividends, it is unnecessary here to determine whether they are to be classed as percentage taxes upon capital, which in the case of a corporation doing both an intrastate and interstate business might be constitutional, or as taxes upon gross earnings, which would clearly be unconstitutional for the

reason, well recognized in the decisions, that neither one form of tax nor the other could be exacted from this relator, a foreign corporation doing interstate business exclusively and having within this State property and agents exclusively engaged in the furtherance of that business. (*People ex rel. Pennsylvania R. R. Co.* v. *Wemple,* 138 N. Y. 1; *People ex rel. Connecting Terminal R. R. Co.* v. *Miller,* 178 id. 194; *International Text Book Co.* v. *Tone,* 220 id. 313.)

For all these reasons the determination should be annulled.

Woodward, J., concurred.

Determination confirmed, with fifty dollars costs and disbursements.